Good morning. Richard Rohn, appearing. This is a case that comes here after the denial of a petition for rid of habeas corpus and there was an appeal and that's how we end up here at the Ninth Circuit. The Court certified this for one issue. It's a very narrow issue. There were the defendant was convicted of two counts of attempted premeditated, willful and deliberate murder. And quite simply, the issue is whether there's sufficient facts that a rational jury could have come back with that verdict based on the circumstances of the attempt. That's correct. Sufficient evidence that a rational jury could have concluded that there was the necessary attempt and state of mind that's required for a willful, deliberate, premeditated attempted murder. Did the co-defendant get convicted also? Yes. What was his name? The last name was, the co-defendant's name was Singleton. Singleton. Yes. And the way that the facts play out here, and it's kind of an interesting case, even the Court of Appeal noted that it was kind of a crime of opportunity, whereby the appellant and his co-defendant stumbled across the victims in this case as they were pushing an automobile. And from that arose a shooting where no one was injured, no one was hit, and it results in a sentence of 68 years to life sentence. Did Singleton get hit? You had blood on him, didn't you? Well, Singleton got hit, but you raise a very interesting point. He apparently got shot by his co-defendant in the automobile. I was wondering how he got shot, because it's not very clear to me. Well, that's correct. Well, what did happen was Mr. Johnson originally pulled a gun on the victim. When he realized that he knew who the victims was and had dated one of his relatives, he decided that he wasn't going to go through with this and put the gun down. It's a little unclear exactly what happened, but between the defendant and his co-defendant, they struggled over the gun, and that's where Singleton got shot. The Court of Appeal found that Singleton was the shooter. So the question here is how can we have a deliberate, willful, premeditated murder that results in a sentence of 68 years to life when Mr. Johnson withdrew from this, got into a struggle with his co-defendant, and then there was a shooting? The district court suggested that it was Johnson. I guess there was a witness who had seen a person standing in blue who was standing by the car, and I guess there was a suggestion that the jury could have determined that that was Johnson since Singleton had bullet holes in his leg. As far as the district court? Right. That's correct, but the State court found the opposite. But we're only worried about whether viewing the evidence in the light most favorable to the government, a jury rationally could have found that your client was guilty. So it doesn't really matter what the appellate court's view was, does it? Well, I think we have to see if that was a reasoned decision under the – when there's a review of a habeas. But even – I agree with what the court's saying. The point is there was something that was done that was wrong here, and it may have been a crime, but whether it arose to an attempted, premeditated, willful and unlawful – Well, they were in the car together. That's – well, they were pushing the car. Pushing, yeah. There was no one else in the car. Other than those two parties, that's correct. And the gun was your client's to start with. That's correct. But he did – he basically withdrew, pulled away from the situation when he recognized who the victim was. And maybe there was some crime of assault with a deadly weapon, but to – you know, to say that it was premeditated, willful and deliberate I think is a stretch on the facts. Did he testify to say that? Your client did not testify to that. No. That's correct. And Singleton did not testify. I don't believe either of the defendants testified in that case. So it's up to the jury to make inferences as to who shot or who encouraged the shooting. Well, that's – that's correct. And the district court said the jury could have found that either one of them did it. That is what the district court said, although the court of appeals stated that it was – that it was the other – that it was Singleton. So there's a conflict as to – in the evidence as to who did what and by whom. I'd like to reserve the remainder of my time unless the Court has any other questions. Okay. Thank you. You may. Good morning, Your Honor. May it please the Court. California Deputy Attorney General Michael Keller on behalf of the warden. The issue in this case is whether the California State Court reasonably applied the standard in Jackson v. Virginia to find that there was sufficient evidence to sustain the convictions in this case. A couple of things I wanted to address quickly, which was that Petitioner's counsel here stated that there was a struggle. And when you look through the citations in the reply brief to the supplemental excerpts of record, you don't find evidence of a struggle. What – the closest you have is on page 10 of the supplemental excerpts of record. And the testimony says that after he told Petitioner that he recognized him and he saw Petitioner putting the gun down towards his – moving the gun towards his lap, he saw movement from Singleton reaching over in that direction. Here's a gunshot. And then that's when there's the cry out. So there's not a struggle. The gun accidentally discharged. He shoots his friend, his fellow crip. This is a gang-type situation. You have both of the victims are bloods. They're dressed in red. You have Petitioner and Singleton are both crips. They're all in blue. The fact that the car wasn't running perfectly doesn't make a difference. It's a crime of opportunity. They get the car, whether the car's running, whether it's on foot, whether it's on a bike, it doesn't matter. They see people who are their enemy gang. They want to take advantage of this. They want to kill them. Did anybody say he saw somebody shoot out of the car? No one saw the shooting. Could put the gun – the gun was originally in Petitioner's hands. No one ever saw it move over and be in Singleton's hands. Shortly as the shots were being fired or right after the shots were being fired, one of the victims looks over the shoulder, sees Petitioner standing outside the car, which also makes sense because Singleton has a gunshot wound that's gone through both of his legs. Did Johnson have the weapon in his hand then? He didn't see the weapon because he's simply glancing over his shoulder and seeing who's standing outside the car. But the reasonable and logical inference to be drawn from this is yes, because – and the prosecutor explained – Singleton wasn't in a condition to be shooting from his car. How's he shooting from inside the car and not putting holes in his own car as the bullets are flying out? So the logical inference that the jury reached is that you have Petitioner standing outside the car shooting at these victims. Were there any bullet holes in Petitioner's car to show it was shot through the door or anything? Nothing like that, Your Honor. In terms of what we had for bullet holes, we had one bullet that was in the bus bench, which is where the victims had been. Another one struck a 7-11 sign in the area, and then the others weren't recovered. But again – and this is another point that's raised in the briefs by Petitioner – is there was only one bullet that struck that bus bench where they were. Well, all it takes is one bullet to kill and to establish an intent to kill. And the fact that some of these additional bullets were fired that didn't hit either of the victims, it may say something as to Petitioner's marksmanship but doesn't say anything regarding his mental state. That was a question that the jury resolved adversely to Petitioner. And essentially, I think what Petitioner was doing is asking this court to re-weigh the inferences that were reached by the trier of fact in this case, and that's just not this court's role. Does it make any difference that the appellate court said that Singleton fired the shot, or is that correct? Yeah, it used – I think at one point it said it may be inferred that Singleton fired the shots. Ultimately, it doesn't make a difference because under either scenario, whoever the shooter was, the other can and was held responsible as well as under aiding and abetting theory. And ultimately, we're looking at the reasonableness and at the facts, whether the facts themselves would sustain a conviction under these circumstances. Okay, so the gun is Johnson's gun? That's – And he has the loaded gun, and he brandishes it. This is what the court of appeals said. And then he pulled it down, and Singleton, this is what grabbed it and fired it in the direction of the victim. It's correct that the evidence shows that Petitioner had the firearm. They were in on this together as they pulled up towards the victims. Petitioner not only points the gun, but he makes a – you know, curses at him. He used derogatory words for the enemy gang of the victims. And then when one of the victims recognized him, you have a situation where Petitioner then says, my bad, puts the gun towards his lap, doesn't necessarily put it in a glove box or anything like that, just takes it down for a moment. The next thing that's seen is Singleton reaching over. No one says Singleton gets that gun or anything. No one says there's a big struggle. It's just a reaching movement, and then the gun discharges, presumably this is an accident, and Singleton's struck. This – and then that's when we have Petitioner gets outside of the vehicle and fires the five shots. No one sees Singleton doing the shooting. The inference is that Petitioner does it. And it's actually – the amount of time that's passing here also weighs in favor of the finding that there's premeditation. Petitioner makes this original threat, and then when the person speaks back to him, he now has time to contemplate. There's this passage of time between the initial threat, the initial remarks that Petitioner's making while he's branching that gun, and the subsequent shooting in the direction of the victims in an effort to kill him. He has time to contemplate. Do I really want to kill these people because they're members of this rival gang of mine? On the other hand, this person knows who I am and has some sort of a connection to me. The jury can infer that he weighed and had an opportunity to weigh these considerations before ultimately choosing to attempt to kill. And ultimately, these facts were all in front of the jury, and they drew inferences adversely to Petitioner. And under the deference of the Anti-Terrorism and Effective Death Penalty Act, coupled with the standards set forth in Jackson v. Virginia, this court should affirm the district court denial of the habeas petition in this case. Thank you. Thank you. Just very briefly on really what's the key issue in the case. Without it, the conviction can't stand. The question is whether the conduct was willful, deliberate, and premeditated, which requires that there be careful thought and weighing of consideration. You look at the extent of the reflection. What you have here, it almost looked like the Keystone Cops. The defendants are somehow struggling over a gun where one guy gets shot. And then apparently, according to the court of appeal, it was Singleton. On the excerpts of record at page 51, the court's clear that it's Singleton who was the shooter. So how we get to a willful, deliberate, and premeditated homicide, or attempted homicide, under those facts, I think that's what the court has to, is the court's, what the court needs to address. Do you agree that it doesn't make a difference whether Johnson fired the shots or assisted Singleton, as the government suggested? I think it might. I think it makes a difference because we have to look at the factual scenario on what happened to be able to determine whether this is premeditated, deliberate, and willful. And if Singleton did it, after Johnson, who had the gun, basically put the gun down and got out of the situation, the gun was then grabbed by Singleton, who got shot. And then he apparently filed some wild shots that didn't hit anybody. I think it matters to that extent. Well, there was no premeditation, I guess, and the court of appeal threw out the conspiracy count, right? The court of appeal did throw out the conspiracy count. In fact, they didn't reach an agreement beforehand to try to kill. That is correct, that they threw out the conspiracy. They did find that there was premeditation, though, because that's a requirement for the conviction. This is a necessary element. And it's funny, when the court of appeal deals with that, the premeditation, they kind of give it a short shrift, really, on page 51. There's a small paragraph. Of course, premeditation doesn't have to occur over a long period of time, does it? I mean, just like that. That is correct. That is correct. But we do have to determine not every shooting is premeditated. So we do, even though what you're saying is correct, we do have to be able to draw the line. Otherwise, we could say, well, somebody pulled the trigger, it's always premeditated. It sure doesn't look like one in this case. Well, they did drive together to where they were, and they had a loaded gun, and your client brandished the gun. That's true. They also looked at the insulting, the court looked at the insulting statement directed at the rival gang members while brandishing a gun as being evidence of premeditation. That is true. All of those things, though, occurred before Johnson basically backed out of this situation. All of that happened, and then when he realized who the victim was. Well, maybe he didn't back out. Maybe he lowered that gun so he could let the safety off, and then pulling it back up, it went off and hit his buddy, and then he started firing. What about that theory? That may be, but according to the court of appeal, it was Singleton who was the shooter. I presume that all of this got argued to the jury. I think that a good part of it did, but that surely doesn't mean that the state court proceeding was correct, and that's why we have a federal review so that if there's an overcharging or a conviction that shouldn't stand, that's why we're here. But you have to say that the jury's decision was not rational. That's right. And the jury did find that, well, that is what the test is. That's correct. Okay. Thank you very much. Thank you. The case just argued is submitted for decision. Good morning. We'll hear the next case, which is Kurtz v. Alston.
judges: Siler, Schroeder, Ikuta